## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| COUNTY WIDE MECHANICAL SERVICES, LLC,<br>    *Plaintiff*, | ) ) ) ) | 3:20-CV-1135 (SVN) |
| v. | ) ) | |
| REGENT INSURANCE COMPANY,<br>    *Defendant*. | ) ) | May 13, 2022 |

## RULING AND ORDER ON DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Sarala V. Nagala, United States District Judge.

This action is an insurance coverage dispute concerning whether Regent Insurance Company ("Regent") must defend County Wide Mechanical Services ("County Wide") in an underlying lawsuit alleging that County Wide improperly installed a heating, ventilation, and air conditioning ("HVAC") system at The Saybrook, a facility in Haddam, Connecticut. During the relevant time period, Plaintiff and Counterclaim Defendant County Wide had a Contractors General Liability Coverage policy with Defendant and Counterclaim Plaintiff Regent. County Wide brought the present breach of contract action against Regent, claiming that the insurance policy requires Regent to defend County Wide in the underlying action. Regent, which agreed to defend County Wide in the underlying action subject to a reservation of rights, brought a counterclaim seeking a declaration that the insurance policy does not require it to defend County Wide.

Regent filed the present motion for judgment on the pleadings with respect to County Wide's claims and Regent's counterclaim. Specifically, Regent contends that there is no genuine dispute that the insurance policy does not cover the injury alleged in the underlying action, and accordingly seeks dismissal of County Wide's claims and judgment in its favor with respect to its

counterclaim.  County Wide disagrees, contending that, at this stage in the litigation, the Court cannot determine as a matter of law that Regent does not have a duty to defend County Wide.  For the reasons described below, the Court agrees with County Wide.  The motion is thus denied.

## I.      FACTUAL BACKGROUND

### A.  The Underlying Action

In 2013, the plaintiff in the underlying action, MCAP Sabine Pointe LLC d/b/a The Saybrook at Haddam ("The Saybrook"), entered into a contract with an underlying defendant, PAC Group, LLC ("PAC Group"), under which PAC Group agreed to serve as the general contractor for the construction of an addition to The Saybrook's facility.  Underlying Cross-cl., ECF No. 26-3, ¶¶ 1–2.  PAC Group subsequently entered into a contract with County Wide to have County Wide install an HVAC system for the addition.  *Id.* ¶ 6.

The HVAC system was put into service on November 14, 2014.  Underlying Compl., ECF No. 26-2, ¶ 15.  In October of 2019, The Saybrook filed the underlying action, captioned *MCAP Sabine Pointe LLC d/b/a The Saybrook at Haddam v. PAC Group, LLC, et al.*, MMC-CV19-6026425, in Connecticut state court against PAC Group, County Wide, and others.[1]  *Id.*  The Saybrook alleged that there had been at least seven "critical failures" of the HVAC system since it was put into service, none of which were attributable to actions taken by The Saybrook.  *Id.* ¶ 16.  The underlying complaint states that "[a]s a result of the failures, The Saybrook has replaced multiple compressors in the HVAC system and several circuit boards, valves, and other

---

[1] The HVAC system was purchased from LG Electronics, U.S.A., Inc., and it was distributed by R.A. Nokia & Associates, LLC, both of which are defendants in the underlying action.  Underlying Compl. ¶¶ 4–5.  In addition, County Wide entered into a contract with A-1 Services, Inc., also a defendant in the underlying action, to have A-1 Services conduct the start-up procedures of the HVAC system.  *Id.* ¶ 7.  None of these defendants in the underlying action are litigants in the present action.

components." *Id.* ¶ 17.  The Saybrook further alleged that it had incurred considerable damages as a result of the various malfunctions and must replace the HVAC system entirely.  *Id.* ¶¶ 19–20.

Relevant here, The Saybrook brought claims for breach of contract against PAC Group and County Wide.  *Id.* ¶¶ 21–24 (Count One alleging breach of contract against PAC Group), 59–63 (Count Eight alleging breach of contract against County Wide).  The Saybrook alleged in its breach of contract claim against PAC Group that PAC Group failed to "supply and install a functioning HVAC System" as agreed, and that PAC Group agreed to be "responsible to The Saybrook for the work of all its subcontractors, including but not limited to, County Wide."  *Id.* ¶¶ 22–23.  In addition, in its breach of contract claim against County Wide, The Saybrook alleged that it was an intended third-party beneficiary of PAC Group's contract with County Wide regarding the installation of the HVAC system.  *Id.* ¶ 61.  The Saybrook further alleged that County Wide "failed to fulfill its obligation to properly install the HVAC System, which caused or contributed to its multiple failures and inefficiency."  *Id.* ¶ 62.

In the same action, PAC Group brought a crossclaim against County Wide, asserting one count of contractual indemnification and one count of breach of contract under PAC Group's contract with County Wide.  Underlying Cross-cl., ECF No. 26-3, ¶¶ 12, 15.  Specifically, PAC Group alleged that, if The Saybrook's allegations are proven true, then County Wide failed to perform under its contract with PAC Group by failing "to install a functioning HVAC system." *Id.* ¶ 15.  PAC Group further alleged that, as a result of County Wide's breach, it has incurred and will continue to incur damages for which County Wide is liable, such as defense costs, damages that may be awarded to The Saybrook, and costs for pursuing its crossclaim.  *Id.* ¶ 17.

B.   County Wide's Insurance Policy with Regent

From March 4, 2014, to March 23, 2015, County Wide maintained a Contractors General Liability Coverage policy with Regent that provided coverage up to $2 million.  Ans. Ex. A, ECF No. 21-1, at 47; Mot. for J. on Pleads., Ex. E, ECF No. 26-6, at 2, 4.  The insurance policy specifically provides that Regent "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' . . . to which this insurance applies."  Ans. Ex. A at 47.  The policy applies only to property damage caused by "an occurrence" that occurs during the policy period.  *Id.*  "An occurrence" is defined as "an accident." *Id.* at 63–64.  "Property damage" is defined, in relevant part, as: "Physical injury to tangible property, including all resulting loss of use of that property."  *Id.* at 64.  The policy also provides various exclusions, including for damage arising from liability that the insured has assumed from a third party.  *Id.* at 49.  Specific policy language is set forth as relevant below.

In October 2019, after The Saybrook filed the underlying action, County Wide tendered the action to Regent for defense.  Countercl., ECF No. 21, ¶ 10.  In February 2020, Regent declined to defend County Wide, contending that the underlying action sought damages that were not covered by the policy.  *Id.* ¶ 11.  Specifically, Regent asserted that the policy did not cover defense of the underlying action because The Saybrook's damages were alleged to have been incurred as a result of County Wide's improper installation of the HVAC system.  *Id.*  Accordingly, Regent contended, the damages did not constitute "property damage" caused by an "occurrence" under its policy.  *Id.*

C.   The Present Action

In June of 2020, County Wide brought the present action against Regent in Connecticut state court, alleging that Regent had improperly denied its obligation under the insurance policy to

defend County Wide against The Saybrook's underlying claim and PAC Group's underlying crossclaim. Compl., ECF No. 1-1, ¶ 11. Specifically, County Wide alleged two counts: first, a breach of contract claim arising from Regent's allegedly wrongful refusal to defend County Wide pursuant to the insurance policy; and second, a claim for breach of the implied covenant of good faith and fair dealing. *Id.* ¶¶ 19, 27.

In August 2020, Regent removed the action to the United States District Court for the District of Connecticut, invoking the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). Notice of Remov., ECF No. 1, ¶ 12. Regent subsequently filed a motion to dismiss for failure to state a claim, contending that the insurance policy did not obligate it to defend County Wide in the underlying action. ECF No. 10. In January of 2021, however, before the motion to dismiss was resolved, Regent requested permission to withdraw the motion and to instead file an answer and counterclaim, which the Court (Bolden, J.) granted. ECF Nos. 20–22.

Regent alleged, and County Wide admitted, that approximately contemporaneous with withdrawing its motion to dismiss and filing its responsive pleading, Regent rescinded its denial of coverage. Countercl. ¶ 14; Countercl. Def.'s Reply, ECF No. 25, ¶ 14. Specifically, Regent alleged that it "agreed to provide a defense to County Wide subject to [a] reservation of rights to decline to defend and/or indemnify County Wide against an adverse judgment to which the Policy does not apply," and "also agreed to reimburse County Wide for its post-tender reasonable and necessary defense costs incurred in" the underlying action. Countercl. ¶ 14. Regent makes clear in its counterclaim that it "does not concede that it is legally obligated to defend County Wide in the [underlying action], but has agreed to defend and reimburse defense costs as a courtesy to County Wide while it pursues a legal declaration as to its duty to defend and/or indemnify County Wide, if any, in the [underlying action] pursuant to the Policy." *Id.* ¶ 15. To that end, Regent's

one-count counterclaim seeks a declaration under the Declaratory Judgment Act, 28 U.S.C. § 2201, that it has no obligation to defend or indemnify County Wide in the underlying action or crossclaim.  Countercl. ¶¶ 6, 30-31.

In April of 2021, Regent filed the present motion for judgment on the pleadings under Fed. R. Civ. P. 12(c).  ECF No. 26.  At the request of both parties, the Court stayed discovery pending resolution of the motion.  ECF No. 28.  After the case was transferred to the undersigned, the Court heard oral argument on the motion.  Subsequently, the Court ordered supplemental briefing pertaining to the assumption of liability exclusion contained in the insurance policy, discussed below.

## II.   LEGAL STANDARD

### A.   Rule 12(c)

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  The Second Circuit has instructed that a court's consideration of a Rule 12(c) motion may include "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (citation and internal quotation marks omitted).

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim."  *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006) (citation omitted).  As such, the Court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in [the non-movant's] favor. . . . To survive a Rule 12(c) motion, [the] 'complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Johnson v.*

*Rowley*, 569 F.3d 40, 43–44 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Accordingly, the Court reviews Regent's motion for judgment on the pleadings with respect to County Wide's two-count complaint under the standard applicable to a Rule 12(b)(6) motion to dismiss.

When the movant is also a claimant, however, the movant must demonstrate that there is no genuine issue of material fact in the case in order to be entitled to judgment on the pleadings. *See Sheppard v. Beerman*, 18 F.3d 147, 151 (2d Cir. 1994) (holding that district court's resolution of a question of disputed fact was improper on a motion for judgment on the pleadings); *Moreno-Cuevas v. Huntington Learning Ctr.*, No. 9-cv-1237 (JCH), 2010 WL 1292327, at *1 (D. Conn. Mar. 19, 2010) ("Courts have been unwilling to grant a 12(c) motion unless the movant clearly establishes that no material issue of fact remains to be resolved and he is entitled to judgment as a matter of law." (citations omitted)); 5C Wright & Miller, Federal Practice & Procedure, § 1368 ("Thus, the plaintiff may not secure a judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery." (footnote omitted)).   Accordingly, in reviewing Regent's motion for judgment on the pleadings with respect to its one-count counterclaim against County Wide, the Court will not grant the motion unless the pleadings raise no genuine issue of material fact.

### B.  Interpretation of Insurance Policies

Because this is a diversity case, Connecticut law defines the elements of County Wide's cause of action for breach of contract.   Under Connecticut law, "[t]he [i]nterpretation of an insurance policy, like the interpretation of other written contracts, involves a determination of the intent of the parties as expressed by the language of the policy." *Springdale Donuts, Inc. v. Aetna Cas. & Sur. Co. of Ill.*, 247 Conn. 801, 805–06 (1999) (second alteration in original) (citations and

internal quotation marks omitted).  "The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy."  *Id.* at 805.  The contract of insurance "must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy."  *Id.*  In interpreting the policy, "policy words must be accorded their natural and ordinary meaning."  *Id.* at 806.  If the terms of the policy are ambiguous, any ambiguity "must be construed in favor of the insured because the insurance company drafted the policy."  *Id.*

"[T]he question of whether an insurer has a duty to defend its insured is purely a question of law, which is to be determined by comparing the allegations of [the] complaint with the terms of the insurance policy."  *Misiti, LLC v. Travelers Prop. Cas. Co. of Am.*, 308 Conn. 146, 154 (2013) (citation and internal quotation marks omitted).  "The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether [the injured party] has, in [their] complaint, stated facts which bring the injury within coverage.  If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability."  *Springdale Donuts, Inc.*, 247 Conn. at 807 (citations and internal quotation marks omitted).  "If an allegation of the complaint falls *even possibly* within the coverage, then the insurance company must defend the insured."  *Moore v. Cont'l Cas. Co.*, 252 Conn. 405, 409 (2000) (emphasis added) (citation and internal quotation marks omitted).

Specifically, an underlying complaint triggers the liability insurer's duty to defend when "the complaint states facts that bring the injury within the policy coverage," irrespective of facts "outside the four corners of those pleadings indicat[ing] that the claim may be meritless or not covered."  *QSP, Inc. v. Aetna Cas. & Sur. Co.*, 256 Conn. 343, 352, 354 (2001) (emphasis added)

8

(citation and internal quotation marks omitted).  In other words, "the duty to defend is triggered whenever a complaint alleges facts that *potentially* could fall within the scope of coverage[.]" *DaCruz v. State Farm Fire & Cas. Co.*, 268 Conn. 675, 688 (2004) (emphasis in original).  *See also Ryan v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 692 F.3d 162, 167 (2d Cir. 2012) (applying these principles).

"On the other hand, if the complaint alleges a liability which the policy does not cover, the insurer is not required to defend." *Springdale Donuts, Inc.*, 247 Conn. at 807 (citations and internal quotation marks omitted).  Likewise, Connecticut courts "will not predicate the duty to defend on a reading of the complaint that is . . . conceivable but tortured and unreasonable." *Misiti, LLC*, 308 Conn. at 156 (citation and internal quotation marks omitted).  Accordingly, "the insurer has a duty to defend only if the underlying complaint *reasonably* alleges an injury that is covered by the policy." *Id.* (emphasis in original) (citation omitted).

Regent contends that County Wide's breach of contract claim and its declaratory judgment counterclaim present an identical question: whether Regent is obligated to defend County Wide against the underlying action.  In fact, Regent seeks judgment in its favor with respect to both County Wide's claim and Regent's counterclaim for the same two reasons: first, because the underlying injury does not fall within the insurance policy's affirmative grant of coverage; and second, because, even if the Court were to conclude that the underlying injury did fall within coverage, the underlying injury would nonetheless trigger an exclusion to coverage.  The Court considers each argument in turn.  *See Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 774 (2013) ("[W]e begin our analysis with the initial grant of coverage . . . and then consider the effect of the exceptions and exclusions to the policy's coverage.").

### III.    AFFIRMATIVE GRANT OF COVERAGE

A. Legal Standard

Commercial general liability ("CGL") policies are commonplace in the construction business throughout the United States, and they tend to follow "a standard form developed by the Insurance Services Office, Inc."  *Capstone Bldg. Corp.*, 308 Conn. at 766, 773; *see also Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 772 (1993) (noting that "most [commercial general liability] insurance written in the United States is written on these" standardized forms).  Indeed, in *Capstone*, the Connecticut Supreme Court interpreted a policy nearly identical to the one in this dispute.  In *Capstone*, the insured contractor had performed "faulty workmanship" resulting in, among other things, "building code violations, defective construction and poor quality control" on a construction project.  *Id.* at 774, 783.  The court first concluded that, because "negligent work is unintentional from the point of view of the insured," such negligent work can constitute the basis for an "accident" or "occurrence" under the "plain terms" of a CGL policy.  *Id.* at 776.

The *Capstone* court then proceeded to consider whether the damage constituted covered "property damage" as that term was defined by the policy, which was identical to the definition of "property damage" in the policy in this case.  *Id.* at 774, 783.  In concluding that damage caused by faulty workmanship did *not* constitute covered "property damage," the court held: "physical injury to tangible property would not include construction deficiencies unless they damage other, nondefective property."  *Id.* at 784–85.  In so concluding, the court relied on *Travelers Indemnity Co. of America v. Moore & Associates Inc.*, 216 S.W.3d 302, 310 (Tenn. 2007), which held that an insurance policy covered liability arising from a defective window installation because "the alleged defective installation resulted in water penetration causing further damage" to the walls of the structure, and *Lamar Homes, Inc. v. Mid-Continent Casualty Co.*, 242 S.W.3d 1, 10 (Tex.

2007), which held that an insurance policy covered liability arising from the defective construction of a building's foundation because the defective workmanship caused sheetrock and stone veneer to crack.  The rule from *Capstone*, then, is that "if there is no damage beyond the faulty workmanship or defective work, there is no resulting property damage" under the CGL policy.  *Id.* at 785.  If, on the other hand, there is damage *beyond* the defective work to other, nondefective property, such damage would fall under a CGL policy's affirmative grant of coverage.

B. <u>Discussion</u>

In seeking judgment on the pleadings, Regent contends that, under *Capstone*, the underlying complaint does not allege "property damage" within the meaning of the insurance policy, and therefore Regent has no duty to defend County Wide in the underlying suit. Specifically, Regent argues that The Saybrook has alleged only damages to the HVAC system itself—the object of County Wide's defective work—and not to any other, nondefective property external to the HVAC system.  Regent further claims that any reading of the underlying complaint to suggest that The Saybrook's damages extend beyond the HVAC system would be "tortured and unreasonable."  *See Misiti, LLC*, 308 Conn. at 156.  County Wide, for its part, argues that a reasonable reading of the language of the underlying complaint potentially includes damage beyond the HVAC system itself, and thus Regent's duty to defend—which attaches when the injury alleged even possibly falls within coverage—should be triggered.

The Court agrees with County Wide.  *Capstone* instructs that The Saybrook's injury will fall within the insurance policy's affirmative grant of coverage if such injury extends to property *beyond* the allegedly defectively installed HVAC system.  In the context of this motion for judgment on the pleadings with respect to Regent's duty to defend, the Court concludes that The Saybrook alleges facts "that *potentially* could fall within the scope of" the policy's affirmative

grant of coverage, triggering the duty to defend.  *See DaCruz*, 268 Conn. at 866 (emphasis in original).

Specifically, The Saybrook alleges that, as a result of the HVAC system's critical failures, "The Saybrook has replaced multiple compressors in the HVAC [s]ystem and several circuit boards, valves and other components."  Underlying Compl. ¶ 17.  The first part of this allegation—that The Saybrook "has replaced multiple compressors *in the HVAC s[y]stem*"—unambiguously indicates that the damaged compressors are *internal* to the HVAC system (emphasis added).  The second part of the allegation—that The Saybrook has replaced several circuit boards, valves, and other components—reads differently, however.  The text of the second part of the allegation does not unambiguously state that the circuit boards, valves, and other components are internal to the HVAC system; rather, it is silent as to where the circuit boards, valves, and other components reside.  Drawing all reasonable inferences in favor of County Wide, as the Court must, the allegation plausibly states that the allegedly damaged circuit board, valves, and other components are *external* to the HVAC system because the phrase "in the HVAC [s]ystem" appears to modify only the phrase "multiple compressors," and not the phrase "circuit boards, valves and other components."  This reading is consistent with the nature of an HVAC system, the installation of which requires integrating it within a building's greater plumbing and electrical systems and may implicate circuit boards, valves, and other components of those systems.  This reading is also consistent with The Saybrook's further general allegation that it has "suffered damages" as a result of PAC Group's and County Wide's failure to supply a functioning HVAC system.  *Id.* ¶¶ 24, 63.  Such damages are not alleged to have been limited to the HVAC system itself.

Thus, The Saybrook's underlying complaint plausibly suggests that its injury includes damage to nondefective property beyond the HVAC system—circuit boards, valves, and other

components—which raises the possibility that The Saybrook's injury constitutes "property damage" as defined by the insurance policy and interpreted in *Capstone*. *See Moore*, 252 Conn. at 409 ("If an allegation of the complaint falls even possibly within the coverage, then the insurance company must defend the insured." (citation and internal quotation marks omitted)).   At the very least, The Saybrook's complaint contains a "[f]actual uncertainty," arising "when it is unclear from the face of the [underlying] complaint whether an alleged injury occurred in a manner that is covered by the policy," which the Connecticut Supreme Court has reasoned "works in favor of providing a defense to an insured[.]" *See Nash St., LLC v. Main St. Am. Assur. Co.*, 337 Conn. 1, 10 (2020) (citing *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 620 (2d Cir. 2001) (noting that factual uncertainty, among other varieties of uncertainty, "can give rise to . . . a duty to defend" under New York law)).   In other words, the underlying complaint plausibly suggests that, or at least is uncertain whether, The Saybrook suffered an injury external to the HVAC system as a result of County Wide's defective installation of the HVAC system.   That plausible suggestion or factual uncertainty raises a genuine dispute as to the possibility of coverage, which triggers the duty to defend.

Regent contends that interpreting the underlying complaint to suggest damage external to the HVAC system would predicate Regent's duty to defend on a tortured and unreasonable reading of the underlying complaint, against which the Connecticut Supreme Court has expressly instructed. *See Misiti, LLC*, 308 Conn. at 156.   The Court disagrees.   Rather than torturing the underlying complaint, the Court's conclusion that there is a possibility of coverage is a straightforward reading of the underlying complaint's allegations.   It also reflects the broad nature of the duty to defend, the favor afforded to an insured in a coverage dispute, and the Court's obligation to construe facts in the light most favorable to County Wide in considering this motion.

*See Springdale Donuts, Inc.*, 247 Conn. at 807 (noting that an insurer's duty to defend is "much broader in scope and application" than the duty to indemnify); *id.* at 806 (noting that ambiguities in the insurance policy "must be construed in favor of the insured" (citation and internal quotation marks omitted)); *Johnson*, 569 F.3d at 43–44 (noting that a court considering a Rule 12(c) motion for judgment on the pleadings must "draw all reasonable inferences in [the non-movant's] favor").

Regent's duty to defend, however, is subject to reexamination as the case progresses.  At this early stage of the case, the Court is restricted to the four corners of the underlying complaint, as instructed by the Connecticut Supreme Court.  *See QSP, Inc.*, 256 Conn. at 352; *Springfield Donuts, Inc.*, 247 Conn. at 807.  But, as the case moves forward, the factual uncertainty that presently exists may be resolved in Regent's favor, causing its duty to defend to cease.  *See Nash St., LLC*, 337 Conn. at 10 (reasoning that factual uncertainty would "give rise to a duty to defend, *lasting at least until a court determined*" whether the injury occurred in a manner that is covered by the policy, thereby resolving the factual uncertainty (emphasis added)); *Hugo Boss Fashions, Inc.*, 252 F.3d at 620 (noting that the duty to defend "perdures until it is determined *with certainty* that the policy does not provide coverage" (emphasis in original)); *Hartford Cas. Ins. Co.*, 274 Conn. at 469 (noting that the insurer's duty to defend was triggered until the insurer "later discover[ed] facts that would ultimately relieve it" of its duties under the policy).  For instance, if discovery reveals that The Saybrook suffered no damages external to the HVAC system itself, then the factual uncertainty contained in the underlying complaint will be resolved.  In that event, *Capstone* will dictate that there is no further possibility of coverage, and Regent would no longer have a duty to defend.  At this stage, however, the Court concludes that the underlying complaint alleges an injury that possibly falls within the scope of the policy's affirmative grant of coverage.

## IV.    EXCLUSIONS

Having concluded that The Saybrook's injury as alleged potentially falls within the insurance policy's affirmative grant of coverage, the Court next considers whether the injury is nevertheless excluded from coverage.  Exclusions to a CGL policy typically "constitute the bulk of the policy's language and are often determinative of coverage for any particular claim." *Capstone Bldg. Corp.*, 308 Conn. at 787–88.  If the Court finds that an exclusion in the policy applies, it must also consider whether any exceptions to that exclusion bring the injury back within coverage.  As discussed below, the Court finds that the language of the particular exclusion at issue in this case is susceptible to two equally reasonable interpretations.  Thus, Regent is not entitled to judgment on the pleadings.

The parties focus primarily on Exclusion (b),[2] which provides: "This insurance does not apply to: . . . (b.) Contractual Liability: 'Bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." Ans. Ex. A at 49.  Exclusion (b) also contains an exception, which provides: "This exclusion does not apply to liability for damages . . . [a]ssumed in a contract or agreement that is an 'insured contract,' provided the 'bodily injury' or 'property damage' occurs subsequent to the execution of the contract or agreement."  *Id.*  "Insured contract" is defined, in relevant part, as: "f. That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any

---

[2] Regent also discussed at length Exclusion (*l*), which generally excludes from coverage property damage to the insured's work arising from the insured's own defective work.  Ans. Ex. A at 52, 65.  The Connecticut Supreme Court in *Capstone* considered an identical exclusion and held that "[p]roperty damage resulting from the [insured's] own faulty work . . . is precluded from coverage by" this exclusion.  *Capstone Bldg. Corp.*, 308 Conn. at 789.  At oral argument on the instant motion, Regent conceded that a conclusion by this Court that The Saybrook's complaint alleges possible damage external to the HVAC system would necessarily foreclose application of Exclusion (*l*). Accordingly, the Court proceeds to consider only Exclusion (b).

contract or agreement."  *Id.* at 62.  This definition in turn contains several exceptions, none of which apply to this case.

In considering the applicability of Exclusion (b), Regent argues that property damage for which County Wide is "obligated to pay damages by reason of the assumption of liability in a contract or agreement" is excluded from the policy's coverage.  Regent believes that the exclusion should be read broadly, to include *any* assumption of liability undertaken by County Wide, whether the liability was incurred directly by County Wide or borne by County Wide by virtue of an indemnification agreement.[3]  County Wide contends that Exclusion (b) does not apply here because it should be construed narrowly to include only County Wide's assumption of another party's liability undertaken in an indemnification agreement, and not County Wide's direct liability to a contractual counter-party (such as PAC Group).

To begin to assess the parties' arguments, the Court must first further explain the claims alleged against County Wide in the underlying complaint and crossclaim.  The underlying complaint filed by The Saybrook asserts a single theory of liability against County Wide:  The Saybrook claims that County Wide is directly liable to it for breaching the contract between County Wide and PAC Group because The Saybrook was an intended third-party beneficiary of that contract.  Underlying Compl. ¶¶ 59–63.  The crossclaim filed by PAC Group against County Wide asserts two additional theories of liability against County Wide:  first, PAC Group claims that, if PAC Group is liable to The Saybrook in relation to the non-functioning of the HVAC system, County Wide should indemnify PAC Group under the indemnification provisions of the contract

---

[3] Regent further argues that the exception to the exclusion does not apply; specifically, it contends that none of the damages sought from County Wide fall under a contract in which County Wide assumed the tort liability of another party to pay for property damage to a third person or organization.

between County Wide and PAC Group; second, PAC Group claims that County Wide is directly liable to it for breaching the contract between them.  Underlying Cross-cl. ¶¶ 5–13, 15–18.

As noted, two of the theories under which County Wide is potentially liable assert *direct* liability by County Wide for its own alleged breach of contract; the remaining theory asserts a claim for indemnification, in which County Wide could be liable because it agreed to assume the losses of PAC Group.[4]  Accordingly, the question for the Court is whether there is any genuine dispute, drawing all inferences in favor of County Wide, that County Wide would be obligated by any of these theories of liability to pay damages "by reason of [its] assumption of liability in a contract or agreement[.]"  This, in turn, depends on scope of the phrase "assumption of liability" in Exclusion (b).

To this Court's knowledge, the Connecticut Supreme Court has never interpreted a CGL insurance policy assumption of liability exclusion akin to Exclusion (b).  The few courts around the country that have addressed this type of provision have disagreed over how to interpret it. *O&G Indus., Inc. v. Litchfield Ins. Grp., Inc.*, No. CV126006448S, 2015 WL 3651786, at *10 (Conn. Super. Ct. May 15, 2015) (noting that "[o]ther jurisdictions are split as to whether the contractual liability exclusion language applies to *any* contractually assumed liability by the insured or is limited to a contractual obligation to indemnify a third party" (emphasis added)).  As explained further below, certain courts adopt a broad interpretation of this exclusion.  They reason that an insured's assumption of liability falls within the exclusion whenever the insured purports

---

[4] Neither party to the present litigation provided the contract between County Wide and PAC Group as an attachment to the pleadings.  Excerpts from that contract are found in PAC Group's underlying crossclaim alleging contractual indemnification and breach of contract against County Wide.  *See* ECF No. 26-3 ¶¶ 7, 10–11.  The indemnification provisions are broad.  For instance, one provides that "[County Wide] (and its agents) shall at all times defend, indemnify, protect, and hold PAC [Group] . . . harmless from any and all claims, losses and damages of any nature whatsoever (including but not limited to any lawsuits or legal actions of any kind whatsoever) which are directly or indirectly caused by or arise out of [County Wide's] work or from the acts or omissions of [County Wide], or its agents, subcontractors, or employees, or anyone performing any [part] of this subcontract work, including all costs and attorney's fees." *Id.* ¶ 11.

to assume a liability, even if the liability is solely the insured's.  In other words, these courts find the exclusion applicable to *any* form of assumption of liability.  Other courts adopt a narrow interpretation of this exclusion.  In these jurisdictions, for the exclusion to apply, the insured must have assumed a liability that first attached to the contractual counter-party and was then shifted to the insured *by virtue of* the insured's contractual assumption of the counter-party's liability, such as in an indemnification agreement.  At least two courts, including one Connecticut trial court, have adopted the broad interpretation, whereas at least three other courts have adopted the narrow interpretation.

More specifically, the courts adopting the broad interpretation of the exclusion hold that the assumption of liability exclusion encompasses all liability contractually assumed by the insured.  They reason that the parties to the insurance contract knew how to limit the scope of the exclusion to indemnification or hold harmless agreements when they wished to do so.  *O&G Indus., Inc.*, 2015 WL 3651786, at *10; *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126–27 (Tex. 2010).  For instance, the courts note that the policy language excludes from coverage any liability that the insured has contractually assumed, but reinstates coverage for "the tort liability *of another*" that the insured has assumed.  *Id.* at 124–25.  Thus, if the parties wanted the policy to exclude *only* the liability *of another* that the insured has assumed, the parties could have drafted the insurance policy to say so, as they did when limiting the scope of the tort liability for which coverage is reinstated.  *Id.* at 127 ("The exclusion bars coverage for liability of a third party that is assumed, such as that assumed by an indemnity agreement. But had it been intended to be so narrow as to apply *only* to an agreement in which the insured assumes liability of another party by an indemnity or hold-harmless agreement, it would have been simple to have said so."); *id.* at 128 ("The fact that [the reinstatement of coverage for

the insured's assumption of another's tort liability] explicitly references assumption of the tort liability *of another* demonstrates that the parties are capable of using such narrow, specific language when that is their intent.").  Moreover, the courts adopting the broad interpretation note that it makes sense to exclude all contractual assumptions of liability from coverage because a general liability insurance policy is not a surety agreement or otherwise "designed to guarantee performance under the terms of a contract that the insured enters into with a third party." *O&G Indus., Inc.*, 2015 WL 3651786, at *10.

The courts narrowly interpreting the assumption of liability exclusion reason that the narrow scope inheres in the nature of an *assumption* of liability.  Specifically, they reason that "[t]he term 'assumption' must be interpreted to add something to the phrase 'assumption of liability in a contract or agreement.'  Reading the phrase to apply to all liabilities sounding in contract renders the term 'assumption' superfluous." *Am. Fam. Mut. Ins. Co. v. Am. Girl, Inc.*, 268 Wis. 2d 16, 48 (2004).  To that end, these courts define "assumed liability" as "liability originally incurred by a third party but then taken on by another." *Ind. Ins. Co. v. Kopetsky*, 11 N.E.3d 508, 523 (Ind. Ct. App. 2014).  This definition recognizes "the important distinction between incurring liability through breach of contract and specifically contracting to assume liability for another's negligence." *Olympic, Inc. v. Providence Wash. Ins. Co. of Alaska*, 648 P.2d 1008, 1011 (Alaska 1982).  Accordingly, these courts conclude that "the contractually-assumed liability exclusion applies where the insured has contractually assumed the liability of a third party, as in an indemnification or hold harmless agreement; it does not operate to exclude coverage for any and all liabilities to which the insured is exposed under the terms of the contracts it makes generally." *Am. Fam. Mut. Ins. Co.*, 268 Wis. 2d at 48. *See also Olympic, Inc.*, 648 P.2d at 1011 ("Because 'liability assumed by contract' refers to a particular type of contract—a hold harmless

or indemnification agreement—and not to the liability that results from breach of contract, the contractual liability exclusion applies only to hold harmless agreements.").  They also note that this interpretation of the assumption-of-liability exclusion has been adopted by a majority of courts.  *Ind. Ins. Co.*, 11 N.E.3d at 524 n.5 (collecting cases).

In this case, Regent urges the Court to take the broad view and County Wide urges the Court to take the narrow view.  If this Court were to interpret the exclusion broadly, consistent with *O&G Industries* and *Gilbert*, Regent contends that it would be entitled to judgment on the pleadings.  Regent's logic is that, in contracting with PAC Group, County Wide "assumed" liability for all of the theories of liability asserted against it in the underlying action.  In Regent's view, all the underlying claims would fall within the broad interpretation of the assumption of liability exclusion and the exception to the exclusion would not apply.  Thus, there would be no possibility of coverage, and Regent would have no duty to defend.

If, on the other hand, this Court were to interpret the exclusion narrowly, assessing the possibility of coverage would require the Court to examine each particular theory of liability asserted in the underlying action, and only the theory of liability based on County Wide's agreement to indemnify PAC Group would be excluded from coverage.  Under that theory, County Wide bears PAC Group's liability to The Saybrook *because* County Wide assumed PAC Group's liability.

Importantly, if the Court were to adopt County Wide's narrow interpretation of the assumption of liability provision, the underlying claims alleging *direct* liability by County Wide would not fall within Exclusion (b); instead, they would be subject to Regent's duty to defend.  In addition, Regent would have a duty to defend not only the direct liability claims that fall outside of Exclusion (b), but, in fact, *all* the claims in the underlying action because an insurer's duty to

defend generally extends to "all claims" against the insured "when even one claim falls 'even *possibly*' within the policy's coverage[.]"  *See Capstone Bldg. Corp.*, 308 Conn. at 814 (citation and internal quotation marks omitted); 44 Am. Jur. 2d Ins. § 1409 (2022) ("Once a complaint states one claim within an insurance policy's coverage, the insurer has a duty to accept the defense of the entire lawsuit.").  Accordingly, County Wide urges the Court to interpret the insurance policy exclusion narrowly, consistent with *American Family* and *Olympic*.

As noted, insurance policies are interpreted by the same general rules that govern the construction of any other written contracts.  *Nat'l Grange Mut. Ins. Co. v. Santaniello*, 290 Conn. 81, 88 (2009) (citations and internal quotation marks omitted).  A contract is unambiguous "when its language is clear and conveys a definite and precise intent."  *Harbour Pointe, LLC v. Harbour Landing Condo. Ass'n, Inc.*, 300 Conn. 254, 260 (2011) (quoting *Cantonbury Heights Condo. Ass'n, Inc. v. Local Land Dev., LLC*, 273 Conn. 724, 734 (2005)).  If the language of the contract "is susceptible to more than one reasonable interpretation, the contract is ambiguous."  *Id.* at 261.  Moreover, the existence of "both a narrow and a broad definition" of a term in a contract "imports an ambiguity into the meaning of the term."  *R.T. Vanderbilt Co., Inc. v. Cont'l Cas. Co.*, 273 Conn. 448, 464 (2005).

As noted above, there are two possible constructions of the assumption of liability exclusion.  In the Court's view, each is reasonable, rendering the exclusion ambiguous.  The phrase "assumption of liability" in the exclusion does not convey a "definite and precise intent" *either* to apply narrowly to only an insured's indemnification agreements *or* to apply broadly to all of an insured's contractual obligations.  *See Harbour Pointe, LLC*, 300 Conn. at 260 (citation and internal quotation marks omitted).  The exclusion thus does not unambiguously preclude coverage for County Wide as to all of the theories of liability that County Wide faces in the underlying suit.

Indeed, the fact that courts of different levels around the country have reached different conclusions in examining the scope of assumption of liability exclusions illustrates the ambiguity of the provision and the reasonableness of both views.

The Connecticut Supreme Court has instructed that ambiguous policy language "can give rise to the duty to defend." *Nash St., LLC*, 337 Conn. at 11 (citing *Wentland v. Am. Equity Ins. Co.*, 267 Conn. 592, 600–01 (2004)). That is because "[t]he words of the policy are given their natural and ordinary meaning, and any ambiguity is resolved in favor of the insured." *Wentland*, 267 Conn. at 600–01 (citations omitted). "[W]hen the words of an insurance contract are, without violence, susceptible of two [equally reasonable] interpretations, that which will sustain the claim . . . must, in preference, be adopted." *R.T. Vanderbilt Co.*, 273 Conn. at 462 (citations and internal quotation marks omitted; second alteration in original). This rule is based on the "basic principle of insurance law that policy language will be construed as laymen would understand it . . . and that ambiguities in contract documents are resolved against the party responsible for its drafting." *Id.* at 463. With respect to interpreting coverage exclusions in particular, "the language should be construed in favor of the insured unless [the court] has a high degree of certainty that the policy language clearly and unambiguously excludes the claim." *Nationwide Mut. Ins. Co. v. Pasiak*, 327 Conn. 225, 239 (2017) (citation and internal quotation marks omitted).

The Court holds that, because the exclusion is ambiguous, Regent has a duty to defend County Wide in the underlying suit. In so holding, the Court need not definitively interpret the assumption of liability exclusion either broadly or narrowly. *See Wentland*, 267 Conn. at 601 (recognizing that it was "not necessary" for the court "to decide definitively" what a particular word in the policy meant because the word was "sufficiently ambiguous that, when read in light of the injured parties' complaints, the duty to defend was triggered"). Interpretation of the

exclusion would resolve Regent's ultimate duty to *indemnify* County Wide. The question presented here involves whether there is a genuine dispute about Regent's duty to *defend*.[5] At this stage, given that the phrase "assumption of liability" in Regent's policy is ambiguous, and bearing in mind that the existence of ambiguity favors the insured, Regent has an obligation to defend County Wide in the underlying suit.

In summary, the Court cannot conclude that all the liabilities asserted against County Wide in the underlying action fall within Exclusion (b) with such certainty as to warrant judgment on the pleadings. Given the ambiguity of the phrase "assumption of liability" as applied to the various theories of liability asserted against County Wide in the underlying action, there remains a possibility of coverage, and, accordingly, Regent must defend.[6] *See Moore*, 252 Conn. at 409; *DaCruz*, 268 Conn. at 688.

## V.    BAD FAITH CLAIM

Regent also contends that it is entitled to judgment on the pleadings with respect to County Wide's bad faith claim on the ground that such a claim cannot survive where the insurer has not breached the terms of the policy. County Wide's bad faith claim is based on Regent's initial refusal to defend County Wide in the underlying action. *See* ECF No. 1-1 at 7–8.

The Connecticut Supreme Court has recognized "an independent cause of action in tort arising from an insurer's common law duty of good faith." *Buckman v. People Express, Inc.*, 205

---

[5] Although Regent's counterclaim seeks a declaratory judgment that it has neither a duty to defend nor a duty to indemnify County Wide, its motion for judgment on the pleadings focuses on its duty to defend. *See* ECF No. 26. The Court does not opine on Regent's duty to indemnify. *See Wentland*, 267 Conn. at 600 (noting that "an insurer's duty to defend its insured is triggered without regard to the merits of its duty to indemnify"); *Capstone Bldg. Corp.*, 308 Conn. at 805 ("the duty to indemnify depends upon the facts established at trial and the theory under which judgment is actually entered in the case").
[6] The Court does not reach the question of interpreting the exception to the exclusion concerning the insured's assumption of tort liability.

Conn. 166, 170 (1987).[7]  "[I]t is axiomatic that the . . . duty of good faith and fair dealing is a covenant implied into a contract or contractual relationship. . . . To constitute a breach of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith. . . . Bad faith means more than mere negligence; it involves a dishonest purpose." *Capstone Bldg. Corp.*, 308 Conn. at 794–95 (citation and internal quotation marks omitted).  However, "because the covenant of good faith and fair dealing only 'requir[es] that neither party [to a contract] do anything that will injure the right of the other to receive the benefits of the agreement,' it is not implicated by conduct that does not impair contractual rights." *Id.* at 795 (quoting *Home Ins. Co. v. Aetna Life & Cas. Co.*, 235 Conn. 185, 200 (1995)).

Accordingly, Regent is correct that bad faith is generally "not actionable apart from a wrongful denial of a benefit under the [insurance] policy." *Id.* at 798.  However, Regent presumes that its rescission of its initial refusal to defend County Wide negates County Wide's claim that Regent breached their agreement.[8]  Earlier in this decision, the Court concluded that there is a genuine dispute regarding whether The Saybrook's injury as alleged possibly falls within coverage, which would trigger Regent's duty to defend at least until the possibility of coverage is extinguished—for example, by indisputable material facts establishing that The Saybrook's

---

[7] Regent characterizes County Wide's claim as asserting a breach of the implied covenant of good faith and fair dealing.  The Connecticut Supreme Court has noted that courts in this state tend to "use the terms 'bad faith,' 'lack of good faith' and 'breach of the covenant of good faith and fair dealing' interchangeably . . . and [apply] the same analysis to claims brought under each of these terms."  *Capstone Bldg. Corp.*, 308 Conn. at 794 n.34 (citation and internal quotation marks omitted).

[8] Indeed, Regent raises an alternative argument that County Wide's breach of contract claim is moot because County Wide, defended by Regent in the underlying action, cannot obtain further relief from this Court.  However, as noted with respect to County Wide's bad faith claim, live disputes remain regarding whether Regent's initial refusal to defend constituted a breach of the insurance policy for which County Wide suffered damages and whether any such breach was committed in bad faith.

damages were limited to the allegedly defectively installed HVAC system itself.  In light of this conclusion, questions remain regarding whether Regent's initial refusal to defend constituted a breach of the insurance policy, whether County Wide has suffered damages arising from Regent's initial refusal, and whether Regent's actions involved a dishonest purpose.  The Court cannot find such questions beyond dispute at this early stage of the case, and thus denies Regent's motion for judgment on the pleadings on this issue.

## VI.    CONCLUSION

Because County Wide has stated plausible claims for breach of contract and the implied covenant of good faith and fair dealing, and because Regent has not demonstrated the absence of any genuine dispute of material fact on its counterclaim, Regent's motion for judgment on the pleadings is DENIED.

**By May 27, 2022,** the parties shall file a joint notice:

1.  informing the Court as to the status of the underlying action;

2.  informing the Court as to the status of discovery in the present action, including a detailed description of what discovery had been exchanged prior to the Court's order staying discovery for the pendency of the motion for judgment on the pleadings;

3.  advising the Court as to what discovery remains to be completed in the case;

4.  proposing deadlines for the completion of discovery and the filing of dispositive motions; and

5. indicating whether either party would find a settlement conference with a U.S. Magistrate Judge productive.

**SO ORDERED** at Hartford, Connecticut, this 13th day of May, 2022.

        _/s/ Sarala V. Nagala_       
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE